J-S18003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.J.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: N.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 312 EDA 2021 |

Appeal from the Decree Entered January 20, 2021
In the Court of Common Pleas of Bucks County
Orphans' Court at No(s): No. 2020-A9060

BEFORE: PANELLA, P.J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                    Filed: August 19, 2021

N.J. ("Mother") appeals from the decree entered January 20, 2021, that granted the petition of Bucks County Children and Youth Services ("CYS") seeking involuntarily termination of parental rights to her son, M.J.J. (born December 2017) ("Child"), pursuant to 23 Pa.C.S.A. § 2511(a)(5), (8), and (b).[1]  After careful review, we affirm.

The record reveals Mother was involved with CYS prior to Child's birth. *See* N.T., 1/12/21, at 15-17.  On January 3, 2019, when Child was approximately thirteen months old, he was removed from Mother's care due

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court also terminated the parental rights of Child's father ("Father") in a separate decree.  Father did not file an appeal, nor has he participated in this appeal.

to her substance abuse. *See id*. at 16. On April 29, 2019, Child was formally adjudicated dependent and placed in the legal and physical custody of CYS. *See id*. at 60. Child's maternal great aunt and great uncle are his foster parents. *See id*.

CYS developed objectives for Mother, including abstaining from drug use and seeking appropriate treatment, obtaining income or employment, and securing suitable housing. Although Mother asserted that she was going to participate in numerous substance abuse programs, she only completed one inpatient program, and failed to follow-up with outpatient programing. *See* Orphans' Court Opinion, 3/12/21, at 2-4. Moreover, Mother put forth a calculated effort to evade unannounced home visits and drug testing. *See id*., at 4-6. In addition, Mother failed to secure appropriate living arrangements and employment. *See id*. at 6-7.

On September 11, 2020, CYS filed a petition to terminate the parental rights of Mother pursuant to Sections 2511(a)(2), (5), and (8). The orphans' court appointed counsel "to represent [Child's] best interests and legal interests in all Orphans' Court proceedings." Order, 10/19/20. An evidentiary hearing was held on January 12, 2021. CYS presented the testimony of Shawn Rush, a CYS caseworker, and Jennifer Flaig, a counselor from Bowling Green Rehabilitation Center where Mother participated in programs. Mother testified on her own behalf.

In a decree entered January 20, 2021, the orphans' court terminated Mother's parental rights. Mother filed a timely notice of appeal and concise statement of matters complained of on appeal. In its opinion, the orphans' court explained that it found termination was appropriate under Sections 2511(a)(5), (8), and 2511(b).

On appeal, Mother argues that the orphans' court improperly terminated her parental rights to Child pursuant to Sections 2511(a)(2), (5), and (8). More specifically, Mother contends that CYS failed to establish by clear and convincing evidence that termination would serve the needs and welfare of Child, or that she is unable to remedy the issues that caused Child to be taken into care. Further, Mother asserts CYS failed to demonstrate that she and Child were not bonded. We disagree.

Our standard of review of termination cases is deferential:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> ... [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial

- 3 -

judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re I.E.P.*, 87 A.3d 340, 343–344 (Pa. Super. 2014) (citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (citation omitted).

"Satisfaction of the requirements in only one subsection of Section 2511(a), along with consideration of the provisions in Section 2511(b), is sufficient for termination." *In re Z.S.W.*, 946 A.2d 726, 729 (Pa. Super. 2008) (brackets omitted, emphasis removed). This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). Here, we will review whether termination was proper under Sections 2511(a)(8) and (b).

Section 2511 of the Adoption Act provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(8).

Under Section 2511(a)(8), the moving party must produce clear and convincing evidence that: "(1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-1276 (Pa. Super. 2003). In addition, we have explained the following:

> Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court. Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of the Agency supplied over a realistic time period. Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the

- 5 -

conditions that initially caused placement or the availability or efficacy of Agency services.

*In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citations and quotation marks omitted).

We are also mindful that this Court has stated that a parent is required "to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002) (citation and quotation marks omitted). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id.*

Instantly, the orphans' court determined CYS established, by clear and convincing evidence that Mother's parental rights should be terminated pursuant to Section 2511(a)(8). The orphans' court made the following statement concerning the continuation of Mother's incapacities, which led to the removal of Child:

> Based on the evidence and testimony provided, and in conformity with the pertinent statutory and decisional law, this Court found that Mother has failed to remedy her parental incapacities for a substantial time period. These incapacity factors include her housing, employment and substance abuse issues which originally brought Child into [CYS's] care.[5] It appears, then, clearly and convincingly, based upon a lengthy history, that the causes of Mother's parental incapacities will not be remedied within a reasonable period of time.
>
> _____
>
> [5] To the extent Mother's intermittent and frequent substance abuse is volitional on her part, so too is the economic insecurity, unstable employment, and unstable housing, to which Child would be subjected were he to be in Mother's care. Mother has been given

- 6 -

> many opportunities by [CYS] and by this court to remedy the conditions and poor choices which have led to her inadequate parenting.

Orphans' Court Opinion, 3/12/21, at 14.

Upon review of the certified record, we conclude that the orphans' court aptly considered the evidence pertaining to the requirements of Section 2511(a)(8). It is undisputed that, at the time of the hearing, Child had been removed from Mother's care for more than twenty-four months. Furthermore, the conditions that led to the placement of Child continue to exist. Specifically, although Mother participated in numerous substance abuse programs and completed one of them, she failed to follow through with additional outpatient treatment. Importantly, Mother tactfully evaded drug testing while Child was in custody. As the orphans' court noted, "During cross-examination of Mother at the evidentiary hearing … Mother admitted that she had been playing games with [CYS] in August and September 2020, in order to avoid being drug tested." Orphans' Court Opinion, 3/12/21, at 5 (record citation and quotation marks omitted). Likewise, Mother evaded home visitations by CYS. *See id.*, at 5-6.

Regarding her living arrangements, Mother reported to CYS having no less than four places of residence from August 17, 2020, through November 23, 2020. *See* Orphans' Court Opinion, 3/12/21, at 6-7. Finally, Mother's employment has been nonexistent. At the evidentiary hearing, Mother indicated that her primary source of income is from unemployment benefits.

*See* N.T., 1/12/21, at 73. Although Mother reported being hired at various jobs during the pendency of this matter, she has not substantiated any of her claimed employment with documentation. *See* Orphans' Court Opinion, 3/12/21, at 7. It is undisputed that Mother was unemployed at the time of the hearing. *See id.* As such, the record supports the orphans' court's conclusion that the termination of Mother's parental rights best serves Child's needs and welfare under Section 2511(a)(8). Accordingly, we discern no abuse of discretion by the orphans' court because its determinations are supported by the record and free of legal error.

Next, pursuant to Section 2511(b), we examine whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of Child. *See In re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id*., at 1287 (citation omitted).

Our Supreme Court has stated the following:

> [I]f the grounds for termination under subsection (a) are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. . . . In *In re E.M.*, 620 A.2d [481,] 485 [(Pa. 1993)], this Court held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations and quotation marks omitted).

Pennsylvania courts have held that, in a termination of parental rights case, the trial court is required to consider "whatever bonds may exist between the children and [the natural parent], as well as the emotional effect that termination will have upon the children." *In re Adoption of A.C.H.*, 803 A.2d 224, 229 (Pa. Super. 2002) (citation omitted). We have stated that, in conducting a bond analysis, the court is not required to use expert testimony. *See In re Z.P.*, 994 A.2d at 1121. Importantly, this Court has also observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). In addition, it is appropriate to consider a child's bond with their foster parents. *See In re T.S.M.*, 71 A.3d at 268.

"The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d at 763. The panel in *In re K.Z.S.* emphasized that, in addition to a bond examination, the court can equally emphasize the safety needs of the child and should consider the intangibles, such as the "love, comfort, security, and stability," the child might have with the foster parent. *Id.*, at 760 (citation omitted).

In *K.Z.S.*, this Court observed that, where the subject child had been almost constantly separated from his mother for four years, any relationship between the two had to be "fairly attenuated," such that the fact that some bond existed did not defeat the termination of the mother's parental rights. *Id*. at 764. Based on the strong relationship that the child in *In re K.Z.S.* had with his foster mother, the child's young age, and his very limited contact with his mother, the panel found competent evidence to support the trial court's termination of the mother's parental rights, even without a bonding evaluation.

Furthermore, in *In re T.S.M.*, our Supreme Court set forth the process for evaluating the existing bond between a parent and a child, and the necessity for the court to focus on, among other things, the availability of an adoptive home. The Supreme Court explained the following:

> In weighing the difficult factors discussed above, courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail … the result, all too often, is catastrophically maladjusted children. In recognition of this reality, over the past fifteen years, a substantial shift has occurred in our society's approach to dependent children, requiring vigilance to the need to expedite children's placement in permanent, safe, stable, and loving homes.

*In re T.S.M.*, 71 A.3d at 268-269.

Here, the orphans' court offered the following regarding Section 2511(b).

- 10 -

Child's primary bond has developed with his foster parents since he has been in the care of [CYS]. [Child] has resided with his great aunt and uncle for more than two years. There are no other children in the foster home, so [Child] is the center of their lives and is their focus. Child has no special medical or mental health needs, and he is reportedly reaching age-appropriate developmental milestones. Despite the ongoing COVID-19 Pandemic, Child's caregivers have continued to facilitate his relationship with A.S., his half sibling. Both [Child's] caregivers and A.S.'s adoptive parents intend to continue to promote a relationship between the two siblings.

Mr. Rush[, the CYS caseworker], described [Child] as an intelligent and lovable child. … Child is not only comfortable, but thriving in the home of his foster parents, a home where he has lived for the vast majority of his life. In sum, there is uncontroverted evidence of a strong bond between Child's foster caregivers and Child.

Orphans' Court Opinion, 3/12/21, at 15 (record citations and quotation marks omitted). The orphans' court further explained:

[T]ermination was warranted here, a result advanced not only by [CYS], but by the court-appointed best interests and legal interests counsel for Child. The record contains clear and convincing evidence that Mother has not made consistently reasonable or responsible strides toward adequately parenting [Child]. The evidence suggests that Mother has thus far failed to adequately address her own circumstances, including substance abuse issues, and inadequate housing and employment. Indeed, the evidence presented lacked any indication of reasonably reliable future plans by Mother to provide adequate housing and support for herself or for [Child].

Importantly for the [c]ourt's best interests of Child analysis, the record is devoid of evidence of a necessary and beneficial relationship between Mother and [Child], the existence of which, should Mother's rights be terminated, would result in a negative effect on Child.

*Id*. at 16.

The competent, clear and convincing evidence in the record supports the orphans' court's conclusion that it would best serve the needs and welfare of Child to involuntarily terminate Mother's parental rights pursuant to Section 2511(b). Our review reflects that Child has spent almost his entire life in the care of his foster parents. Accordingly, any bond between Child and Mother no more than an attenuated one, and the foster parents are providing love, comfort, security, and stability to Child and have done so for more than two thirds of his life. Indeed, it is undisputed that Child's foster parents have a parent-child bond with Child and are meeting Child's developmental, physical, and emotional needs. Again, we discern no abuse of discretion by the orphans' court and conclude that its findings are supported by the record and free of legal error.

Competent evidence supports the orphans' court's conclusion that it would best serve the needs and welfare of Child to terminate Mother's parental rights pursuant to Section 2511(b). Preserving Mother's parental rights would serve only to deny Child the permanence and stability to which he is entitled. *See In re Adoption of C.D.R.*, 111 A.3d 1212, 1220 (Pa. Super. 2015) ("Clearly, it would not be in [the child's] best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent").

Therefore, we conclude there was no abuse of discretion or error of law on the part of the orphans' court when it terminated Mother's parental rights

pursuant to 23 Pa.C.S.A. § 2511(a)(8) and (b).  Consequently, we affirm the decree terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/21